**No. 25-7927**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

IN RE TESLA ADVANCED DRIVER ASSISTANCE SYSTEMS LITIGATION

On Appeal from the United States District Court
for the Northern District of California, No. 3:22-cv-05240-RFL (Lin, J.)

## APPELLANTS TESLA, INC., TESLA LEASE TRUST, AND TESLA FINANCE LLC'S OPENING BRIEF

DAVID C. MARCUS
CHRISTOPHER T. CASAMASSIMA
JOSHUA A. VITTOR
WILMER CUTLER PICKERING
   HALE AND DORR LLP
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
Tel: (213) 443-5312
david.marcus@wilmerhale.com
chris.casamassima@wilmerhale.com
joshua.vittor@wilmerhale.com

ALAN SCHOENFELD
RYAN CHABOT
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 937-7294
alan.schoenfeld@wilmerhale.com
ryan.chabot@wilmerhale.com

March 12, 2026

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION .................................................................................1

JURISDICTIONAL STATEMENT ......................................................3

STATEMENT OF ISSUES ON APPEAL ............................................4

STATEMENT OF THE CASE .............................................................4

    A.    Factual Background ...................................................................4

    B.    Order Granting Class Certification ..........................................9

STANDARD OF REVIEW ................................................................13

SUMMARY OF THE ARGUMENT ..................................................14

ARGUMENT ......................................................................................17

I.    THE DISTRICT COURT ERRED IN GRANTING CLASS
    CERTIFICATION WHERE INDIVIDUALIZED QUESTIONS
    PREDOMINATED OVER COMMON QUESTIONS ....................................17

    A.    Individualized Questions Predominate Because There Is
    No Evidence Of Classwide Exposure ....................................19

        1.    There is no evidence that the class was exposed to
        the Hardware Statement ...............................................22

        2.    Inferring classwide exposure misapplies *Mazza*
        and *Tobacco II* ..........................................................25

    B.    The Proposed Damages Model Fails To Establish
    Predominance ........................................................................28

        1.    The district court abused its discretion in accepting
        a damages model not tied to the alleged
        misrepresentation ........................................................28

2.      The district court abused its discretion in certifying a damages class based on a full-refund model ........................... 32

C.      Individualized Questions Of Tolling Predominate ............................. 33

II.    THE DISTRICT COURT ERRED IN CERTIFYING A RULE 23(b)(2) CLASS ........................................................................................ 37

CONCLUSION ............................................................................................ 41

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019)..........................................................21

*Berger v. Home Depot USA, Inc.*,
741 F.3d 1061 (9th Cir. 2014) ...............................................................20, 21

*Brazil v. Dole Packaged Foods, LLC*,
660 F. App'x 531 (9th Cir. 2016)...........................................................32, 33

*Brown v. Madison Reed, Inc.*,
2021 WL 3861457 (N.D. Cal. Aug. 8, 2021)................................................21

*Castillo v. Bank of America, NA*,
980 F.3d 723 (9th Cir. 2020) .......................................................................15

*Comcast Corporation v. Behrend*,
569 U.S. 27 (2013)...........................................4, 14, 16, 28, 31, 32

*Davis-Miller v. Automobile Club of Southern California*,
201 Cal. App. 4th 106 (2011) .................................................................19, 22

*Del Webb Communities, Inc. v. Partington*,
652 F.3d 1145 (9th Cir. 2011) .....................................................................28

*Downey v. Public Storage, Inc.*,
44 Cal. App. 5th 1103 (2020) ................................................................18, 22

*DZ Reserve v. Meta Platforms, Inc.*,
96 F.4th 1223 (9th Cir. 2024) ...............................................................14, 15

*Ehret v. Uber Technologies, Inc.*,
148 F. Supp. 3d 884 (N.D. Cal. 2015)..........................................................27

*Gutierrez v. Wells Fargo Bank, NA*,
704 F.3d 712 (9th Cir. 2012) .......................................................................11

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)......................................................................................19

*Haskins v. Symantec Corp.*,
654 F. App'x 338 (9th Cir. 2016)................................................................21

*Henson v. Fidelity National Financial, Inc.*,
300 F.R.D. 413 (C.D. Cal. 2014)...............................................................34

*In re Linerboard Antitrust Litigation*,
305 F.3d 145 (3d Cir. 2002) ......................................................................36

*In re Tobacco Cases II*,
240 Cal. App. 4th 779 (2015).....................................................................32

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009)...............................................................................21

*Jimenez v. Allstate Insurance Co.*,
765 F.3d 1161 (9th Cir. 2014) ...................................................................35

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017) ...................................................................18

*Knapp v. AT&T Wireless Services, Inc.*,
195 Cal. App. 4th 932 (2011) ....................................................................22

*Lanovaz v. Twinings North America, Inc.*,
726 F. App'x 590 (9th Cir. 2018)...............................................................39

*Leyva v. Medline Industries*,
716 F.3d 510 (9th Cir. 2013) .....................................................................29

*Lytle v. Nutramax Laboratories, Inc.*,
114 F.4th 1011 (9th Cir. 2024)..................................................................20

*Marlo v. UPS, Inc.*,
639 F.3d 942 (9th Cir. 2011) .....................................................................14

*Mazza v. American Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .................... 1, 15, 18, 19, 21, 22, 24, 25, 26, 28

*Microsoft Corp. v. Baker*,
582 U.S. 23 (2017).....................................................................................20

*Nguyen v. Nissan North America, Inc.*,
 932 F.3d 811 (9th Cir. 2019) ...................................................................29

*Noohi v. Johnson & Johnson Consumer Inc.*,
 146 F.4th 854 (9th Cir. 2025) .............................................................20, 29

*O'Connor v. Uber Technologies, Inc.*,
 904 F.3d 1087 (9th Cir. 2018) ...................................................................3

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*,
 31 F.4th 651 (9th Cir. 2022) (en banc) .....................................13, 14, 18, 29

*Parsons v. Ryan*,
 754 F.3d 657 (9th Cir. 2014) ...................................................................37

*Pfizer, Inc. v. Superior Court*,
 182 Cal. App. 4th 622 (2010) ...................................................................21

*Pulaski & Middleman, LLC v. Google, Inc.*,
 802 F.3d 979 (9th Cir. 2015) ...................................................................29

*Shook v. Board of County Commissioners of County of El Paso*,
 543 F.3d 597 (10th Cir. 2008) .............................................................40, 41

*Small v. Allianz Life Insurance Co. of North America*,
 122 F.4th 1182 (9th Cir. 2024) ................................................................17

*Stearns v. Ticketmaster Corp.*,
 655 F.3d 1013 (9th Cir. 2011) .............................................................14, 20

*Walker v. Life Insurance Co. of Southwest*,
 953 F.3d 624 (9th Cir. 2020) ..............................................................20, 28

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ........................................................................38, 39, 40

*Williams v. Sinclair*,
 529 F.2d 1383 (9th Cir. 1975) ..................................................................36

## STATUTES AND RULES

28 U.S.C. §1292(e) ...........................................................................................3

Fed. R. Civ. P. 23 .....................................................................................3, 17, 37

**INTRODUCTION**

The district court certified a false advertising class action based on a single allegedly false statement on a single subpage of Tesla's website about Tesla's advanced driver-assistance system technology—namely, that Tesla vehicles already had all necessary hardware for fully autonomous driving (the "Hardware Statement"). For a class to be certifiable, this Court requires evidence that all classmembers were exposed to an allegedly false statement. *See Mazza v. American Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012). No evidence showed that all purchasers were exposed to the Hardware Statement: Plaintiff Thomas LoSavio put forth none, the district court identified none, and Tesla demonstrated otherwise, showing that the relevant subpage received only a sliver of web traffic and that *no* consumers—whether their purchases were made via Tesla's website or without going to Tesla's website at all—were ever required to encounter the subpage. Yet because Tesla does not engage in traditional print, radio, or television advertising, and therefore purchasers learn about Tesla products from Tesla directly, the district court made the unprecedented and unsupported inference that all purchasers would have visited this subpage with the Hardware Statement. The court acknowledged that this was "a departure from the typical approach." It was not a permissible one.

The district court's acceptance of LoSavio's "full refund" damages model was equally impermissible. *First*, LoSavio's model was required to measure damages

stemming from the Hardware Statement, the sole potentially actionable basis for classwide liability, because the district court found that all his other alleged false statements were not actionable. LoSavio's model did not even try to measure damages connected to the Hardware Statement, and instead just awarded every purchaser a full refund of the cost of the Full Self-Driving Capability (FSDC) package. *Second*, a full-refund damages model is acceptable only when a product is *worthless* to every putative classmember. But even if Tesla vehicles lacked all the hardware needed for full autonomy (which Tesla disputes), the FSDC package was not worthless—it undisputedly provided a slew of features including Autopark, Auto Lane Change, Smart Summon, Traffic-Aware Cruise Control, and Traffic Light and Stop Sign Control, which purchasers including LoSavio admittedly used and valued. The district court should have rejected this damages model, and with it, class certification.

Further, despite undisputed evidence that individual putative classmembers' claims would be time-barred if not tolled, the district court erroneously concluded that tolling was subject to classwide proof. Whether an individual putative classmember is entitled to tolling requires analyzing whether she was exposed to statements that allegedly delayed discovering a cause of action and lulled her away from pursuing it. The district court performed this analysis for LoSavio at the motion-to-dismiss stage and found that his claims were not time-barred, for reasons

- 2 -

specific to LoSavio.  It will have to do the same analysis for every purchaser.  The court erred in certifying a class where such individualized inquiries are required.

The district court also erred in certifying an injunctive relief class. Recognizing that many classmembers might not benefit from a forward-looking injunction, the court narrowed the injunctive class to classmembers who "would like to purchase or subscribe to FSD[C] in the future."  1-ER-21.  That class is impossible to measure, as there is no way to determine who might or might not want to "purchase or subscribe to FSD[C] in the future."  Rule 23(b)(2) does not permit a subjective-intent class, which allows for no administrable method for determining class membership in advance and offers no way to ensure uniform, classwide benefit.

This Court should reverse the order certifying the classes.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction to review the district court's order granting class certification under 28 U.S.C. §1292(e) and Federal Rule of Civil Procedure 23(f). *See O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1094 (9th Cir. 2018).  The district court entered that order on August 18, 2025.  Tesla timely filed a Rule 23(f) petition on September 1, 2025, which the Court granted on December 18, 2025.  *See* No. 25-5532, Dkt. 12 (Dec. 18, 2025).

## STATEMENT OF ISSUES ON APPEAL

1.  Whether the district court erred by inferring classwide exposure to an alleged misrepresentation disseminated through limited channels, without any evidence that classmembers were necessarily or actually exposed to the alleged representation.

2.  Whether the district court erred by certifying a class premised on a proposed damages methodology (a) that was not tied to the alleged misrepresentation at issue, contrary to *Comcast Corporation v. Behrend*, 569 U.S. 27 (2013), and (b) that calculated damages only as a full refund without determining that the product, or any of the features it came with, provided no value.

3.  Whether the district court erred by certifying a class where individualized questions regarding whether the statute of limitations bars each putative classmember's claims predominate over classwide questions.

4.  Whether the district court erred by certifying an injunctive relief class defined by each putative classmember's subjective intent to buy or subscribe to a product in the future.

## STATEMENT OF THE CASE

### A.  Factual Background

LoSavio moved to certify two classes of California consumers who purchased a Tesla vehicle and paid extra for a Full Self-Driving Capability (FSDC) package

between 2016 and the present.[1]  LoSavio argued that he purchased FSDC believing that his car would become fully autonomous within "the next year or two, or some similar reasonable time after his purchase."  3-ER-407.  This belief, according to LoSavio, arose from two alleged misrepresentations: (1) that Tesla vehicles were already equipped with the hardware necessary for fully autonomous driving, and (2) that a Tesla vehicle would be able to drive itself across the country within the following year ("Cross-Country Statement").  1-ER-3.[2]  According to the complaint, versions of the Hardware Statement appeared on various subpages of Tesla's website from October 2016 until August 2024, and were also made by Tesla in scattered other instances—at an October 2016 press conference; in an October 2016 blog post; in a November 2016 newsletter; and in a May 2017 earnings call.  1-ER-3-4, 1-ER-10.  For his part, however, LoSavio alleged that he personally observed the Hardware Statement on a subpage of Tesla's website in October 2016 (the "Autopilot Subpage") and in the November 2016 Tesla newsletter.  1-ER-5.  At no point did consumers need to visit the Autopilot Subpage to purchase FSDC—they would need to seek it out.  1-ER-12-13.

---

[1]    FSDC is the legacy name for technology that has continued to evolve and today is called Full Self-Driving (Supervised).

[2]    LoSavio's motion for class certification was limited to these two alleged misrepresentations because the court earlier dismissed his claims to the extent that they were premised on any of the other statements that he originally claimed were misleading.  4-ER-602.

During the relevant period, Tesla offered FSDC for purchase, as an optional add-on, to consumers who purchased or leased Tesla vehicles. Buying the FSDC software package gave consumers access to Tesla's continually improving technology, including the rollout of its advanced driver-assistance systems ("ADAS"). ADAS technologies use a combination of in-vehicle hardware and software systems to assist drivers with the safe operation of their vehicles. 3-ER-379-389. Over time, as Tesla continued to develop its ADAS software, it made updates available to FSDC purchasers through over-the-air software updates. *Id.* These advanced driver-assistance features include, for example, Autopark, Auto Lane Change, Smart Summon, Traffic-Aware Cruise Control, and Traffic Light and Stop Sign Control. *Id.* Thus, consumers who paid for the FSDC package could make use of features that were unavailable to consumers who only purchased the vehicle itself. *Id.*

Tesla does not engage in any kind of traditional marketing for its vehicles or for FSDC—for instance, it does not do television, radio, or print advertisements. Unlike most automobile manufacturers, Tesla sells its vehicles and software packages directly to consumers, not through dealers. 1-ER-2. During the relevant period, consumers seeking to purchase FSDC along with a Tesla vehicle were never made to encounter the Hardware Statement. 1-ER-11. Consumers did not need to visit the Autopilot Subpage on Tesla's website to complete their purchase. 1-ER-

- 6 -

11. The Hardware Statement was not posted in Tesla sales centers, and it was not part of the purchase flow on Tesla's website. *See* 1-ER-10. The relevant subpage only ever received a tiny fraction of visitors relative to Tesla's website. 3-ER-393-395. Customers could purchase FSDC through over-the-air updates without going to Tesla's website at all. 3-ER-386.

In support of his motion for class certification, LoSavio relied on the testimony of Dr. Gerald Goldhaber, a purported expert in advertising, who opined that "Tesla's marketing is unique in its direct communications creating an 'information environment' directed at its consumers." 3-ER-415-416. From that opinion, and the fact that "consumers paid thousands of dollars for features," LoSavio argued that the Hardware Statement was material to a reasonable consumer. 3-ER-416. LoSavio did not offer any "targeted surveys" or "focus groups" to support this claim, but suggested that they could be "confirmed" using such tools. *Id.*

To support his contention that damages were subject to common proof, LoSavio relied on Edward Stockton, a purported economics expert, who opined that "reasonable methods exist to quantify" damages on a classwide basis and proposed a "full refund" of the amounts consumers paid for FSDC, without determining that consumers obtained no value at all from FSDC or any of its many undisputed features, and without attempting to calculate the value that consumers did receive

- 7 -

from them.  3-ER-416.  LoSavio's motion offered no evidence that classmembers were necessarily or actually exposed to the Hardware Statement.

In its opposition, Tesla gave several independent reasons why LoSavio's motion fell short of the requirements of Rule 23.  First, Tesla argued that a false advertising class could not be certified because there was no evidence that the alleged misrepresentations were uniformly made to the entire class.  3-ER-275, 3-ER-280-281.  LoSavio offered no evidence that all putative classmembers, most putative classmembers, or even any putative classmember, other than himself, were exposed to the Hardware Statement.  To the contrary, Tesla's evidence had demonstrated that FSDC purchasers need not encounter the Hardware Statement and that the Autopilot Subpage received a fraction of the visitor traffic that Tesla's website as a whole did—as the district court noted, for example, over 11 million people visited the Tesla site in December 2019 and nearly 15 million visited in October 2021, while only 14,000 to 16,000 people (or approximately 0.1% of overall traffic) visited the Autopilot Subpage in those months.  1-ER-13; 3-ER-282, 3-ER-276; *see also* 3-ER-393-395.

Tesla argued further that LoSavio's proposed full-refund damages model failed to calculate damages from the Hardware Statement only, and that because FSDC and its features were not worthless, giving a full refund ignored the value classmembers received.  3-ER-275, 3-ER-289-290.

The only evidence LoSavio put forth in support of class certification was the word of three experts, none of whom, Tesla pointed out, conducted *any* analysis of exposure, reliance, or damages. 3-ER-278, 3-ER-283, 3-ER-285.

Additionally, Tesla argued that individualized questions predominated due to Tesla's statute of limitations affirmative defense, which would require the court to undertake a highly fact-intensive inquiry into each individual classmember's basis for tolling, as it had for LoSavio's. 3-ER-275, 3-ER-291-292.

Tesla further opposed certification of the injunctive class, arguing that an injunctive class is inappropriate when a plaintiff is seeking damages and where, as here, the proposed injunction would provide no relief to the class. 3-ER-293-296.

## B. Order Granting Class Certification

The district court certified two damages classes composed of California consumers who purchased or subscribed to FSDC. 1-ER-7-8. In doing so, the court held that classwide exposure to the Hardware Statement could be "infer[red]" and that classwide evidence of reliance could be assumed based on that inference, 1-ER-11; that LoSavio's full-refund damages model sufficiently calculated damages from his theory of liability on a classwide basis, 1-ER-17-18; that questions about the statute of limitations were "well-suited for resolution on a class-wide basis," 1-ER-19; and that an injunctive class of would-be purchasers was appropriate, 1-ER-21-22.

- 9 -

With respect to exposure, the district court conceded that Tesla does not engage in traditional mass advertising of the type that this Court requires to overcome the rule that plaintiffs must prove classwide exposure, but nonetheless held that Tesla's "distinctive advertising strategy warrant[ed] a departure from the typical approach." 1-ER-10-11. Pursuant to this "departure," the court certified a class based on an *inference* of classwide exposure to the Autopilot Subpage, a subpage of Tesla's website that contained the Hardware Statement between October 2016 and August 2024. 1-ER-11. The court acknowledged that consumers were never required to visit the Autopilot Subpage—or any other source containing the Hardware Statement—in order to purchase FSDC, but nonetheless held that, as in product labeling cases (which this is not), there was an "inherently high likelihood" that almost all consumers would have reviewed the Autopilot Subpage and relied upon the Hardware Statement when deciding whether to purchase the product. 1-ER-12. In so holding, the court decided that evidence showing that very few consumers ever visited the Autopilot Subpage had "little bearing" on the issue and did not prevent an inference of classwide exposure. 1-ER-13. Aside from that one subpage, the district court concluded that "where the Hardware Statement did not appear on the Tesla site, the remaining channels of communication are insufficient to support an inference of class-wide exposure." 1-ER-11-12 & n.2. It therefore "limited" the class "to the duration for which the Hardware Statement was present

- 10 -

on the website." *Id*. Despite that conclusion, the court also decided—contrary to the evidence—that it was "reasonable to infer" that any "*alternative* sources" of information available to Tesla consumers existed within a uniform "information environment" and thus necessarily would have served to "reinforce Tesla's core message[,] … even if they do not specifically contain the Hardware Statement." 1-ER-11 (emphasis added).

In declining to certify a class with respect to the Cross-Country Statement, the district court correctly recognized that certification is improper where an alleged misrepresentation is not so "pervasive" that "almost every class member can be reasonably inferred to have seen it." 1-ER-13 (citing *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 729 (9th Cir. 2012)). But the court incorrectly distinguished the Cross-Country Statement as not "located prominently on [Tesla's] website throughout the class period such that a prospective customer would encounter it while researching or purchasing the FSD[C package]." 1-ER-14. As Tesla's evidence demonstrated, the Hardware Statement was not "located prominently" on Tesla's website either, and there is no evidence that prospective customers "would encounter it while researching or purchasing" FSDC.

The district court also accepted LoSavio's full-refund damages model. The court recited the principle that a damages model must "measure only those damages attributable to [plaintiffs'] theory" of liability, and not any other theory, but then did

not require LoSavio's damages model to attribute damages to the Hardware Statement. 1-ER-17-18. And the court accepted LoSavio's full-refund damages model without finding that FSDC provided *no* value to any of the consumers who purchased it, and despite ample evidence to the contrary including LoSavio's own deposition testimony. *Id.*; *see also* 3-ER-311-314 at 30:7-14, 37:20-38:2, 39:7-9. LoSavio made no attempt, nor did the court, to account for the value putative classmembers actually received from FSDC.

In a similar vein, the court found that evidence regarding defenses to the statute of limitations could be determined with classwide proof, but failed to consider the individualized questions inherent in such a determination. 1-ER-18-19. LoSavio brought this suit several years after he purchased his Tesla with FSDC, and his claim would be barred absent tolling. 4-ER-603. Because the court previously found that either the delayed discovery rule or equitable tolling of the limitations period were defenses available to LoSavio based on statements Tesla allegedly made that lulled LoSavio into continuing to believe fully autonomous driving was forthcoming, 4-ER-603-604, the court concluded that the entire class was entitled to such defenses. 1-ER-19. But the court did so without addressing the various individual statements that may or may not have lulled classmembers, the individualized questions regarding exposure to those statements, or the individualized questions regarding the ways in which individuals may have

- 12 -

interpreted these statements. 1-ER-18-19. Although the court previously conducted such an individualized inquiry as to LoSavio, 4-ER-603-604, it ignored that a similar inquiry would be necessary for each individual classmember, instead concluding summarily that the tolling theories "turn primarily on the objective inquiry of whether Tesla's misrepresentations to the class stopped a consumer from discovering the cause of action." 1-ER-18. Pointing to only one alleged "lulling" statement, and without considering whether the class was exposed to it, the court found that whether consumers were lulled was a "matter of common proof." 1-ER-19.

Finally, in addition to the damages classes, the district court certified an injunctive relief class defined by reference to each individual classmember's subjective, future-oriented intentions. 1-ER-21-22. The court limited the Rule 23(b)(2) injunctive relief class to purchasers "who have stated that they would like to purchase or subscribe to FSD[C] in the future but cannot rely on the product's future advertising or labelling." 1-ER-21. It is impossible to know who would be bound by a judgment for or against such a class, making it impossible to determine whether injunctive relief "is appropriate respecting the class as a whole." *Id*.

## STANDARD OF REVIEW

The decision to certify a class pursuant to Rule 23 is reviewed for "an abuse of discretion." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31

- 13 -

F.4th 651, 663 (9th Cir. 2022) (en banc). "An abuse of discretion occurs when the district court … relies upon an improper factor, omits consideration of a factor entitled to substantial weight, or mulls the correct mix of factors but makes a clear error of judgment in assaying them." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1018 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). At all times, "the party seeking class certification bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met." *Marlo v. UPS, Inc.*, 639 F.3d 942, 947 (9th Cir. 2011).

## SUMMARY OF THE ARGUMENT

I.     This Court should reverse the order granting class certification because LoSavio failed to carry his burden to prove that Rule 23(b)(3)'s predominance requirement is satisfied. To show predominance, LoSavio had to prove that the issues can be resolved on a classwide basis, without a need for extensive individualized factfinding. But the record shows that nearly every key element presents individualized questions, including exposure and reliance, damages, and the statute of limitations.

A.     To certify a class, LoSavio had to show that all classmembers were, in fact, exposed to the alleged misrepresentation that he challenges. It is black-letter law that a false advertising class must include only those people who were exposed to the supposed misrepresentation. *See, e.g.*, *DZ Rsrv. v. Meta Platforms, Inc.*, 96

- 14 -

F.4th 1223, 1237 (9th Cir. 2024). If classmembers were "never exposed to the challenged" statements, then they "could not have been injured by those [statements] in the first place," and no class can be certified. *Castillo v. Bank of Am., NA*, 980 F.3d 723, 732 (9th Cir. 2020). LoSavio offered no proof that all putative classmembers (or even most, or any but himself) ever saw the Hardware Statement. It is undisputed that the Hardware Statement appeared on a seldom-visited subpage of Tesla's website—one that consumers did not need to visit to purchase or subscribe to FSDC.

But the district court excused LoSavio's evidentiary failing and inferred classwide exposure anyway. In *Mazza*, this Court rejected that presumed-exposure approach, emphasizing that all classmembers must "have viewed the allegedly misleading [statements]." *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012). Nothing in this case warrants departure from that rule. Without the required classwide proof, individualized issues relating to each putative classmember's exposure to the Hardware Statement necessarily predominate.

B. The certification order also should be reversed because the district court accepted LoSavio's "full refund" damages model despite two dispositive shortcomings. *First*, LoSavio's proposed damages model was not connected to the alleged misrepresentation. Plaintiffs seeking certification must establish "that damages are capable of measurement on a classwide basis" and put forward a

damages model tethered to their theory of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34-36 (2013). In support of his proposed damages methodology, LoSavio made no attempt to attribute damages to the Hardware Statement. Without a damages model capable of establishing this connection on a classwide basis, individualized questions related to measuring each classmember's damages "inevitably overwhelm" common questions. *Id.* at 34-35.

*Second*, the district court further erred by accepting a damages model whose premise was that FSDC was worthless to every classmember, such that a "full refund" is appropriate. That premise is wrong. Extensive evidence showed that many purchasers (including LoSavio himself) used and valued their FSDC features. LoSavio's full-refund damages model made no effort to account for this value. The district court erred by accepting it.

C. Individualized questions also predominate with respect to whether the statute of limitations bars each individual classmember's claims. At the motion-to-dismiss stage, the district court found that the delayed discovery rule and equitable estoppel were defenses available *to LoSavio* because of his particularized allegations of diligence—having made "repeated attempts to update his car's technology and talk with Tesla"—but that "the *extent* of his diligence and its reasonableness" were "questions of fact not suitable for disposition at this stage." 4-ER-603-604 (emphasis in original). At the certification stage, however, the court concluded that

- 16 -

it could make those same determinations on a classwide basis based on an "objective inquiry of whether Tesla's misrepresentations to the class stopped a consumer from discovering the cause of action or pursuing a lawsuit." 1-ER-18. That ruling wrongly assumes that each individual purchaser saw the same statements that allegedly lulled LoSavio, and that each individual purchaser was similarly diligent in investigating the basis for his claims. That assumption, again, is legal error. To establish predominance, LoSavio had to furnish common proof of classwide exposure as to the alleged "lulling" statements. There is none.

II. The court also erroneously certified an injunctive relief class under Rule 23(b)(2). Such a class should only be certified where injunctive relief "is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). But here, the district court defined the class by reference to the subjective, future intentions of individual classmembers, namely purchasers "who have stated that they would like to purchase or subscribe to FSD[C] in the future but cannot rely on the product's future advertising or labelling." 1-ER-21. This is not a permissible injunctive relief class under Rule 23(b)(2).

## ARGUMENT

### I. THE DISTRICT COURT ERRED IN GRANTING CLASS CERTIFICATION WHERE INDIVIDUALIZED QUESTIONS PREDOMINATED OVER COMMON QUESTIONS

Rule 23(b)(3) sets a demanding standard, and its predominance requirement "regularly presents the greatest obstacle to class certification." *Small v. Allianz Life*

*Ins. Co. of N. Am.*, 122 F.4th 1182, 1198 (9th Cir. 2024). A damages class may be certified only where plaintiffs show "by a preponderance of the evidence" that "essential elements of the cause of action" are "capable of being established through a common body of evidence, applicable to the whole class," and that "common questions predominate over individualized ones." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664, 666 (9th Cir. 2022) (en banc).

LoSavio failed to do so here, and the district court erred in certifying the class. *First*, LoSavio failed to prove classwide exposure to the alleged false advertising. Plaintiffs seeking restitution under California law on behalf of a false-advertising class "must prove that (1) the class members were exposed to the advertisement, (2) the advertisement was deceptive, and (3) the deception was material." *Downey v. Pub. Storage, Inc.*, 44 Cal. App. 5th 1103, 1115 (2020); *accord Mazza v. American Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012). LoSavio did not prove that any (let alone all) absent putative classmembers "were exposed" to the Hardware Statement on the Autopilot Subpage. *Second*, LoSavio failed to prove "that damages are capable of measurement on a classwide basis, in the sense that the whole class suffered damages traceable to the same injurious course of conduct underlying the plaintiffs' legal theory." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017). LoSavio did not prove that the Hardware Statement justified a full refund or that FSDC was so worthless as to justify a full refund. *Third*, LoSavio failed to

prove that the individualized inquiry needed to toll his claims would not predominate over common questions when applied to each purchaser.

The district court erred in granting class certification when LoSavio did not meet his burden to "actually *prove*—not simply plead—that [his] proposed class satisfies each requirement of Rule 23, including … Rule 23(b)(3)." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275-276 (2014) (emphasis in original).

### A. Individualized Questions Predominate Because There Is No Evidence Of Classwide Exposure

False advertising classes cannot be certified unless every putative classmember was exposed to the alleged misrepresentation. *See Mazza*, 666 F.3d at 596 (a certified class must "include only members who were exposed to advertising that is alleged to be materially misleading"). A proposed class that "almost certainly includes members who were not exposed to, and therefore could not have relied on, [the] allegedly misleading advertising material" cannot satisfy Rule 23(b)(3). *Id*. In such cases, determining who *was* exposed to the advertising requires individualized inquiries, and "common issues of fact would not predominate." *Id.*

Plaintiffs carry the burden of demonstrating classwide exposure. *See Davis-Miller v. Auto. Club of S. California*, 201 Cal. App. 4th 106, 124-125 (2011) ("With respect to the plaintiffs' false advertising theory of recovery, [the UCL and CLRA] require, at a minimum, that the class be exposed to the allegedly false advertising at issue and, with respect to the CLRA, an additional showing of reliance must be

made."); *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) ("[C]lass certification of UCL claims is available only to those class members who were actually exposed to the business practices at issue."), *abrogated on other grounds by Microsoft Corp. v. Baker*, 582 U.S. 23 (2017).

In limited contexts not relevant here—such as product labeling cases and cases involving what is known as the *Tobacco II* exception—courts have permitted a "conclusive presumption" of classwide exposure in lieu of proof. *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 n.13 (9th Cir. 2011). That narrow presumption seldom applies, and only in narrow circumstances: where the alleged misrepresentations are "so pervasively disseminated" that "all plaintiffs *must* have been exposed to them." *Walker v. Life Ins. Co. of Sw.*, 953 F.3d 624, 631 (9th Cir. 2020). For example, in product labeling cases, the alleged misrepresentation appears on a product's label or packaging and so courts in this Circuit infer that anyone who bought the product was exposed to it. *See, e.g.*, *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1020 (9th Cir. 2024); *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 869 (9th Cir. 2025) (noting that classwide exposure was "undisputed" because "the 'oil-free' term appears in the Product's name prominently displayed on the front of the packaging"). In much rarer cases, under California's *Tobacco II* exception, a similar presumption may be permitted when a plaintiff proves that the misrepresentations in question were part of such a "decades-long," "massive

advertising campaign" that it leaves "little doubt that almost every class member had been exposed to defendants' misleading statements." *Mazza*, 666 F.3d at 596 (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 324-327 (2009)).

As courts have repeatedly recognized, the *Tobacco II* presumption of exposure is only available in "narrow circumstances." *See Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (affirming dismissal where pleadings did not reflect "the narrow circumstances identified in *In re Tobacco II*"); *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 563 (N.D. Cal. 2019) ("the *Tobacco II* exception is narrow and applies to long-term advertising campaigns"); *Brown v. Madison Reed, Inc.*, 2021 WL 3861457, at *11 (N.D. Cal. Aug. 8, 2021) ("the scope of the *In re Tobacco II* exception is narrow"). The *Tobacco II* presumption applies only in the context of an "extensive and longterm fraudulent advertising campaign," and not where it is "unreasonable to presume" that "all of the members of [a] proposed class were exposed to [the] alleged deceptive practices." *Berger*, 741 F.3d at 1068-1069. *Tobacco II* did not dilute the requirement that plaintiffs must show classwide exposure in an ordinary false advertising case, as California courts have repeatedly held. *See, e.g.*, *Pfizer, Inc. v. Superior Ct.*, 182 Cal. App. 4th 622, 632 (2010) ("*Tobacco II* does not stand for the proposition that a consumer who was never exposed to an alleged false or misleading advertising or promotional campaign is

entitled to restitution.").[3] Thus, no *Tobacco II* presumption applies when "it is likely that many class members were never exposed to the allegedly misleading advertisements." *Mazza*, 666 F.3d at 595; *see also Davis-Miller*, 201 Cal. App. 4th at 125 (notwithstanding *Tobacco II*, "[a]n inference of classwide reliance cannot be made where there is no evidence that the allegedly false representations were uniformly made to all members of the proposed class").

Here, neither basis for finding classwide exposure—evidence or inference—existed. *First*, LoSavio presented no evidence that every member of the putative class actually was exposed to the Hardware Statement on the Autopilot Subpage. *Second*, no presumption of exposure should have applied here. This is not a product labeling case, nor a case with a "decades-long," "massive advertising campaign." The district court thus abused its discretion in certifying a class that "almost certainly includes members who were not exposed to, and therefore could not have relied on, [the] allegedly misleading advertising material." *Mazza*, 666 F.3d at 596.

---

[3] *See also Knapp v. AT&T Wireless Services, Inc.*, 195 Cal. App. 4th 932, 945 (2011) ("[W]e do not understand the UCL to authorize an award for injunctive relief and/or restitution on behalf of a consumer who was never exposed in any way to an allegedly wrongful business practice."); *Downey*, 44 Cal. App. 5th at 1120 ("We disagree with plaintiffs that *Tobacco II* abrogated the requirements of exposure and deception …."); *id.* (*Tobacco II* does not excuse classmembers "from having to prove that [they were] actually exposed to *at least one* deceptive advertisement").

### 1. There is no evidence that the class was exposed to the Hardware Statement.

Plaintiffs ordinarily must prove classwide exposure by evidence, not by inference, and LoSavio fell far short of his burden. Consumers did not need to visit the Autopilot Subpage containing the Hardware Statement to complete their purchase. It was not part of the FSDC purchase flow online. Indeed, Tesla put forward evidence—which the district court credited—that the Autopilot Subpage was seldom visited and only ever saw a sliver of the Tesla website's total web traffic. *See* 3-ER-393-395. Altogether, at no time were purchasers of FSDC ever required to encounter the Hardware Statement—not in any form, not through any channel— as the district court acknowledged. 1-ER-11.

Even accepting the district court's premise that FSDC buyers would have done some research on FSDC given its cost, there are many other sources from which consumers could have learned about FSDC besides this single Autopilot Subpage— and none has the Hardware Statement. *See, e.g.*, 3-ER-453-461, 3-ER-426-431, 3-ER-433-451, 3-ER-463-468, 3-ER-470-475, 2-ER-264-265, 2-ER-258-262, 3-ER-361 at 52:8-16.

The court acknowledged these "alternative sources" of information but it decided that they would "reinforce Tesla's core message that full-self driving capability is on the horizon, even if they do not specifically contain the Hardware Statement." 1-ER-11. This theory comes from LoSavio's purported marketing

expert Goldhaber, who opined that Tesla's unique advertising approach had given rise to an "information environment"—encompassing all the channels through which Tesla's product information might be communicated—in which the Hardware Statement was consistently communicated or reinforced. *Id.* Goldhaber, of course, did nothing to investigate how many absent putative classmembers (if any) actually visited the Autopilot Subpage. 3-ER-357 at 40:15-24. Nor did he provide any evidence that all (or even any) putative classmembers would necessarily have encountered the Hardware Statement in any alternative sources. And Goldhaber did not even try to prove that Tesla's "information environment" only contained statements somehow "consistent" with the Hardware Statement. Instead, he merely assumed that every statement within the so-called "information environment" would be consistent with (but not actually contain) the Hardware Statement—which the district court decided was enough proof of classwide exposure to the Hardware Statement itself.

That is not the law in this Circuit. This Court has made clear that "[f]or everyone in the class to have been exposed," "everyone in the class [must] have viewed the allegedly misleading advertising." *Mazza*, 666 F.3d at 596. Not other statements in some so-called "information environment" supposedly surrounding the allegedly misleading advertising, whatever that means, or other statements

vaguely "consistent with" it, whatever that means. To sue a company over its alleged misrepresentation, you must have seen *the misrepresentation*. *See id.*

The district court thus abused its discretion in certifying the class without any evidence of classwide exposure to the Hardware Statement. *See Mazza*, 666 F.3d at 596 ("[T]he district court abused its discretion in finding that common issues of fact predominate because the small scale of the advertising campaign does not support a presumption of reliance.").

### 2. Inferring classwide exposure misapplies *Mazza* and *Tobacco II*.

Without evidence of classwide exposure, class certification usually fails. There are, however, rare and narrow accepted approaches to inferring exposure under this Court's precedent. The district court acknowledged that inferring exposure here departed from the accepted approach, but did so anyway. The court dramatically expanded the limited exception in *Tobacco II* to cover not only products with "massive advertising campaigns" but also products with *no* advertising campaigns, effectively eliminating the classwide exposure requirement for companies that use "nontraditional advertising." That was an error.

The Court's decision in *Mazza* establishes when classwide exposure under *Tobacco II* may be inferred. The plaintiffs in *Mazza* alleged that Honda misrepresented that its add-on Collision Mitigation Braking System package was "designed to help alert the driver of a pending collision or—if it's unavoidable—to

reduce the severity of impact by automatically applying the brakes if an impending collision is detected." *Mazza*, 666 F.3d at 586-587. Similar statements appeared in company brochures, television commercials, and dealership materials—far more than a single website subpage, but still less than the massive marketing campaign of *Tobacco II*. *See id.* The district court held that Honda's advertising was enough to infer exposure and so reliance. But this Court reversed. It concluded that those materials did not amount to "the kind of massive advertising campaign at issue in *Tobacco II*" (that is, were not pervasively disseminated), making "it unreasonable to assume that all class members viewed" the alleged misleading advertisement. *Id.* at 596. The Court therefore held that the district court "erroneously concluded that all consumers who purchased or leased the Acura RL can be presumed to have relied on defendant's advertisements." *Id.* at 585. Just so here—indeed far more so here, where the class was certified based on a single sentence on a subpage of Tesla's website and for only "the duration for which the Hardware Statement was present on the website." 1-ER-11-12 & n.2. The district court's certification order is thus directly contrary to the result in *Mazza*.

The district court failed to distinguish *Mazza*, instead merely holding that the Hardware Statement was "more akin to those [representations] in product labeling cases," where "courts have inferred class-wide exposure based on the 'inherently high likelihood' that consumers would have relied upon those representations when

- 26 -

encountering them in the course of purchasing the product." 1-ER-12 (quoting *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 895 (N.D. Cal. 2015)). But there is no such "inherently high likelihood" that Tesla customers would have encountered the Hardware Statement "in the course of purchasing" FSDC. 1-ER-12.

Product purchasers are necessarily exposed to its label and packaging. Online purchasers can also necessarily be exposed to statements in the purchase flow. But this case is not like those necessary exposure cases: here, it was undisputed, and the district court accepted, that FSDC buyers did not necessarily encounter the Hardware Statement. 1-ER-11.

Indeed, LoSavio put forward no evidence to show how many FSDC purchasers actually visited the Autopilot Subpage. LoSavio did not show that *any* Tesla website visitor but himself visited that subpage, let alone that *all* buyers did. In fact, only a negligible percentage of Tesla website visitors visited that subpage. 3-ER-393-395. The district court credited Tesla's web traffic data but concluded that "the view counts are consistent with a finding of class-wide exposure" because "thousands of people on average … viewed the Autopilot page." 1-ER-13. That some unidentified thousands of people viewed the subpage (out of the millions visiting Tesla's website overall) proves nothing to support class certification. Again, LoSavio offered zero evidence that this small subset of visitors included any unnamed classmembers. LoSavio needed to leave "little doubt that almost every

- 27 -

class member had been exposed to defendants' misleading statements." *Mazza*, 666 F.3d at 596. He came nowhere close.

By inferring classwide exposure in this case, the district court impermissibly expanded both the *Tobacco II* exception and the narrowly-confined inference allowed under *Mazza*. A federal court cannot simply create or expand exceptions under state law. *See, e.g.*, *Del Webb Communities, Inc. v. Partington*, 652 F.3d 1145, 1154 (9th Cir. 2011). And without the *Tobacco II* exception, individualized questions of exposure to the Hardware Statement necessarily predominate. The Hardware Statement, unlike the advertisements at issue in *Tobacco II*, was indisputably not "so pervasively disseminated" that "all plaintiffs must have been exposed" to it, *Walker*, 953 F.3d at 631 (citing *Mazza*, 666 F.3d at 595-596). Under *Mazza*, class certification should have been denied.

**B.     The Proposed Damages Model Fails To Establish Predominance**

The district court erred in certifying two damages classes because LoSavio's "full refund" damages model (1) was not connected to his theory of liability; and (2) was not supported by proof that FSDC had *no* value.

### 1.     The district court abused its discretion in accepting a damages model not tied to the alleged misrepresentation.

Courts must conduct a "rigorous analysis" of whether a plaintiff's damages model is "consistent with its liability case." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). The "key inquiry under *Comcast*" is whether a plaintiff has

"demonstrated the nexus between his legal theory … and his damages model." *Noohi*, 146 F.4th at 867 (quoting *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 821 (9th Cir. 2019)). "[A] model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to that theory." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987 (9th Cir. 2015). "If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id.*

This burden falls on plaintiffs—Rule 23(b)(3) requires them "to show that their damages stemmed from the defendant's actions that created the legal liability." *Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013). And because of that, a district court abuses its discretion when certifying a damages class unless it "considers factors that may undercut the model's reliability (such as unsupported assumptions)" and "resolves disputes raised by the parties." *Olean Wholesale Grocery Coop., Inc.*, 31 F.4th at 683.

LoSavio's theory of classwide liability rests entirely on alleged exposure to the Hardware Statement on the Autopilot Subpage. LoSavio tried to rely on other scattered instances of the Hardware Statement, but the district court rejected that attempt. 1-ER-11, n.2 ("[W]here the Hardware Statement did not appear on the Tesla site, the remaining channels of communication are insufficient to support an

- 29 -

inference of class-wide exposure."). He tried to certify a class based on the Cross-Country Statement, but the court rejected that attempt too. 1-ER-13 ("Plaintiff has not sufficiently demonstrated class-wide exposure to the Cross-Country Statement."). He tried to assert liability based on other statements, but the district court rejected those efforts at the motion-to-dismiss stage. 4-ER-602 ("Claims based on the other alleged representations … are dismissed for failure to plausibly allege that those statements were false or misleading."). All that was left—all that the certification of the class turns on—is the Hardware Statement on the single Autopilot Subpage.

LoSavio's damages model, however, did not even attempt to measure only those damages attributable to that basis for liability. The FSDC package included many features wholly untied to the Hardware Statement, including Autopark, Smart Summon, Auto Lane Change, Traffic-Aware Cruise Control, and Traffic Light and Stop Sign Control. Yet LoSavio relied exclusively on a full-refund damages "model" put forth by his damages expert, Edward Stockton, which would simply add up the full price each classmember paid for FSDC. 3-ER-337. Stockton made no effort whatsoever to isolate damages associated with LoSavio's specific theory of liability: that he was misled by the Hardware Statement into purchasing FSDC.

*First*, Stockton did nothing to model the effect of the Hardware Statement on purchasing decisions as opposed to the effect of any other FSDC features that

- 30 -

consumers received and benefited from. 3-ER-341-342 at 59:10-16, 60:9-14; 3-ER-344-345 at 85:22-86:3; 3-ER-339 at 57:20-58:3. Under his proposed model, someone who purchased FSDC to gain access to any of FSDC's semi-autonomous features—including Autopark, Smart Summons, Auto Lane Change, Traffic-Aware Cruise Control, and Traffic Light and Stop Sign control—would still get a refund. Stockton offered no justification for this approach at deposition.

*Second*, Stockton did nothing to separate out the effect of the Hardware Statement from that of any other statement, including the many other alleged misrepresentations pled by LoSavio that have been trimmed from the case since the litigation began. Statements about the reliability of certain features or the timeline for their delivery, 1-ER-17, are no longer at issue. Classmembers cannot recover damages for purchases made on account of those statements. Yet under LoSavio's model, someone who bought FSDC based solely on inactionable statements, and not based on the Hardware Statement at all, still gets a full refund. In *Comcast*'s words, that model "does not even attempt" to measure only damages attributable to LoSavio's theory of liability, 569 U.S. at 34-35.

Contrary to the district court's suggestion, this is not a case involving "an unexecuted damages model" that ultimately could "reliably calculate damages in a manner common to the class at trial." 1-ER-17. When executed, LoSavio's model just quantifies the full price that a purchaser paid for FSDC. But that full price is in

- 31 -

no way tied or limited to LoSavio's theory of liability, the sole basis of which is the Hardware Statement. That shortcoming cannot be excused or deferred. It required denying class certification. *Comcast*, 569 U.S. at 34-35.

### 2. The district court abused its discretion in certifying a damages class based on a full-refund model.

To certify a class to pursue a full-refund damages theory, LoSavio was required to demonstrate that FSDC provided no value to any purchaser. *See In re Tobacco Cases II*, 240 Cal. App. 4th 779, 795 (2015) ("A full refund *may* be available in a UCL case when the plaintiffs prove the product had *no* value to them." (emphases in original)); *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016) ("[A] plaintiff cannot be awarded a full refund unless the product she purchased was worthless."). There is no such evidence in the record.

To the contrary, evidence showed that purchasers and subscribers received value from FSDC's semi-autonomous features—including Autopark, Smart Summon, Auto Lane Change, Traffic-Aware Cruise Control, and Traffic Light and Stop Sign Control. 3-ER-339-340 at 57:20-58:3; 3-ER-344-345 at 85:22-86:3. LoSavio himself agreed that his Tesla does "auto lane change" (3-ER-312-313 at 37:20-38:2); "regulate[s] the speed," "track[s] to a certain extent to a destination," and "can stop itself" (3-ER-311 at 30:7-14); and that he has used Autopark (3-ER-314 at 39:7-9), proving that he obtained value from these features. LoSavio provided zero evidence, on the other hand, that Tesla's alleged failure to deliver on the

Hardware Statement by itself rendered FSDC totally worthless to him, let alone to every absent putative classmember.

Why would it? Even if Tesla vehicles lacked all the hardware to eventually obtain full autonomy (a claim with which Tesla disagrees), they did have all the hardware to provide the FSDC features that LoSavio and purchasers already enjoyed—the hardware to park themselves, to be summoned by the owner, to change lanes automatically, to cruise control conscious of traffic, and to encourage stopping at lights and stop signs. These are cutting-edge features that provide significant functionality and value. It is unreasonable to deem them *worthless* unless and until the car also has all hardware for eventual full autonomy. LoSavio and absent putative classmembers therefore "cannot be awarded a full refund." *Brazil*, 660 F. App'x at 534. His full-refund damages model, then, cannot support class certification.

## C. Individualized Questions Of Tolling Predominate

Tolling also presents predominant individualized issues. LoSavio's "claims have limitations periods ranging from two to four years," and the case was filed in September 2022. 4-ER-603. Many purchasers' claims are time-barred without tolling—which, here, only purchaser-unique facts can show.

LoSavio proves the point. The district court previously identified all the individualized questions inherent in these issues when deciding whether LoSavio's

own claims were time-barred, including what tolling statements were made; when the discovery of the alleged misrepresentation was made; and whether the discovery could have been made earlier. *See* 4-ER-603-605. LoSavio put himself out as "not just … an ordinarily diligent consumer" but a "particularly diligent consumer." 4-ER-635-636 at 30:23-31:1. He justified tolling by his "repeated attempts to update his car's technology and talk with Tesla," referring to his visits to Tesla showrooms. 4-ER-603-604. The court accepted these individualized allegations on the pleadings, but made clear that individual facts about tolling would rear their heads again: it denied Tesla's motion to dismiss on statute of limitations grounds because the "*extent*" of LoSavio's diligence "and its reasonableness are questions of fact not suitable for disposition" on the pleadings, but were for summary judgment or trial. 4-ER-604 (emphasis in original).

This same analysis must be applied to every purchaser. LoSavio has not demonstrated that any—let alone all—purchasers over eight years were lulled by the same statements in the same way for the same duration. *See Henson v. Fidelity Nat'l Fin., Inc.*, 300 F.R.D. 413, 421 (C.D. Cal. 2014) (denying class certification where individualized questions regarding the statute of limitations predominated because "[p]utative class member No. 1's diligence in unearthing a potential violation … will bear little on putative class member No. 2's actions"). Although the statute of limitations is an affirmative defense, Telsa is entitled to defend itself against each

putative classmember and is entitled to test the facts that purportedly toll each purchaser's claim. Thus, for every single person who ever purchased FSDC from 2016 to 2024, the court or jury will need to consider whether he or she (like LoSavio) visited Tesla showrooms to ask Tesla about the timeline toward "full self-driving," whether he or she (like LoSavio) read news related to Tesla to assess that timeline, and whether he or she (like LoSavio) saw subsequent statements from Tesla that "lulled" him or her into choosing not to file suit in a timely fashion because his or her discovery of the alleged falsity was delayed by these lulling statements. 4-ER-603-604. LoSavio's expert Goldhaber acknowledged that discovery of the Hardware Statement's alleged falsity likely varied among purchasers. 3-ER-364-365 at 89:15-90:1. Even Goldhaber's misguided "information environment" theory cannot make the tolling analysis common because many alleged lulling statements were outside of that supposed "information environment" (*e.g.*, statements made by Tesla personnel to LoSavio only).

The cases cited by the district court—*Linerboard Antitrust Litigation* and *Jimenez*—are inapposite, and did not involve lulling. As an initial matter, *Jimenez* did not involve questions of the statute of limitations at all, and the court there did not need to consider whether putative classmembers were lulled in any way. *Jimenez v. Allstate Ins., Co.*, 765 F.3d 1161, 1164 (9th Cir. 2014). The district court relied on *Jimenez* only to suggest that if "individualized factual inquiries remain as to

certain class members' statute of limitations defense," they could be "handled in a manner similar to that used when individualized damages inquiries arise in class action proceedings." 1-ER-19. That is not *Jimenez*'s holding, and it does not work here where the tolling inquiry goes to whether the defendant has liability at all, not merely in what amount. In *In re Linerboard Antitrust Litigation*, the statute-of-limitations question was just whether the defendants commonly concealed the truth, not whether individual classmembers were individually lulled. 305 F.3d 145, 163 (3d Cir. 2002). There, "common issues of concealment predominate[d]" because "[k]ey questions [do] not revolve around [what plaintiffs] knew." *Id.* Here, however, the key questions revolve around exactly that—what statements putative classmembers saw, whether and how each statement lulled them, and whether and how those statements delayed their discovery. Again, as was the case for LoSavio himself, those questions are individual as to each purchaser. At trial, Tesla would be entitled to—and would—call every single purchaser to the stand to pose those questions to them. That exercise would predominate over resolving any potentially common questions.

The district court abused its discretion in certifying a class where inquiries into when putative classmembers were exposed to the lulling statements that they allegedly relied upon will necessarily predominate, and this Court should reverse. *Cf. Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th Cir. 1975).

## II.    THE DISTRICT COURT ERRED IN CERTIFYING A RULE 23(b)(2) CLASS

Finally, the Court should reverse certification of the Rule 23(b)(2) class.  An injunctive-relief class can be certified under Rule 23(b)(2) only where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  This standard requires, among other things, that plaintiffs "have described the general contours of an injunction that would provide relief to the whole class."  *Parsons v. Ryan*, 754 F.3d 657, 689 n.35 (9th Cir. 2014).  Why?  For one reason, as the district court noted, the whole injunctive-relief class will be "bound by a judgment on that claim."  1-ER-22.  Absent parties who stand to benefit nothing from a win ought not risk a loss.  Losing defendants who are enjoined, meanwhile, must know to whom they can or cannot do whatever it is they have been ordered to do or not do; and winning defendants must know against whom they may continue to act or refuse to act (without being sued again).

These difficulties are prominent in this case.  The district court noted that LoSavio "does not specifically describe the injunctive relief sought," 1-ER-23, but it described the requested relief as generally "seek[ing] to stop Tesla from continuing to state that its vehicles have the hardware capable of full self-driving until the vehicles are actually able to do so."  1-ER-23.  The court agreed with Tesla that it

- 37 -

could not certify a (b)(2) class that would include consumers who do not intend to purchase or subscribe to FSDC in the future:  "Members of the proposed class who have no intention of ever purchasing or subscribing to FSD[C] in the future would obtain no benefit if Tesla were prevented from making the Hardware Statement, yet would be bound by a judgment on that claim."  1-ER-21-22 (citing, *inter alia*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 365 (2011) (reversing certification where about "half the members of the class approved by the Ninth Circuit ha[d] no claim for injunctive or declaratory relief at all")).  In light of this problem, the court correctly declined to certify a class that "would include people who have no intention of purchasing or subscribing to FSD[C] in the future."  1-ER-21.

Wrongly, however, the district court certified a different (b)(2) class: a class of purchasers "who have stated that they would like to purchase or subscribe to FSD[C] in the future but cannot rely on the product's future advertising or labelling."  1-ER-21.  It reasoned that "the injunction must be narrowed to those class members who, like LoSavio, would consider buying FSD[C] again because the injunction would not otherwise provide relief 'to the whole class.'"  1-ER-22.

But in its attempt to circumvent the problem it correctly identified, the district court's redefinition of LoSavio's (b)(2) class merely created a new one: no one knows, or can know, who is in the district court's (b)(2) class.  How must a classmember have "stated" the relevant intent?  To whom?  And as of what time—

by the filing of the complaint, the certifying of the (b)(2) class, the entry of judgment for or against that class? With respect to LoSavio, for example, the district court relied on allegations particular to his "interest[] in purchasing" a Tesla with FSDC in the future. Even if that were enough to show his standing—that LoSavio merely would "consider buying" FSDC again is not, *see Lanovaz v. Twinings North America, Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018)—what if LoSavio changes his mind? When and how must a purchaser become a member of the district court's (b)(2) class? When and how does a purchaser *stop being* a member of the district court's (b)(2) class? Those questions determine who is bound by a judgment on this claim, favorable or unfavorable. But the answers are unknowable.

The Supreme Court encountered a similar problem in *Dukes*. There, the certified (b)(2) class was seeking an order enjoining Wal-Mart from employment discrimination, but the problem was that "plaintiffs no longer employed by Wal-Mart lack standing to seek injunctive or declaratory relief against its employment practices"—they "ha[d] no more need for prospective relief." *Dukes*, 564 U.S. at 364-365. Below, the courts tried to include in the (b)(2) class only people working at Wal-Mart when the complaint was filed. But as the Supreme Court explained, "[t]hat solution has no logical connection to the problem, since those who have left their Wal-Mart jobs since the complaint was filed have no more need for prospective relief than those who left beforehand"—and by the time the case reached the

- 39 -

Supreme Court, "about half" the (b)(2) class had left Wal-Mart and thus had "no claim for injunctive or declaratory relief at all." *Id.* at 365. There, as here, the heart of the problem was that the (b)(2) class as certified "would also require the District Court to reevaluate the roster of class members continually." *Id.* at 364. "What follows from this, however," the Supreme Court explained, "is not that some arbitrary limitation on class membership should be imposed but that [these] claims should not be certified under Rule 23(b)(2) at all." *Id.* at 365.

Same here. The district court agreed that LoSavio's (b)(2) class could not be certified because it included purchasers who never intended to buy FSDC again. The solution was not to impose a subjective-intent "limitation" on class membership, whether pinned to some "arbitrary" time (and demonstrated in some unknown way) or else "continually" changeable and changing. It was to conclude that these "claims should not be certified under Rule 23(b)(2) at all." *Dukes*, 564 U.S. at 365; *see also, e.g.*, *Shook v. Board of Cty. Comm'rs of Cty. of El Paso*, 543 F.3d 597, 608 (10th Cir. 2008) (rejecting (b)(2) class "conformed to an essentially contentless standard, bounded only by reference to ambiguous terms," thereby "embroiling the court in disputes over individualized situations and constantly shifting class contours"). This is not about ascertainability—whether the parties can identify the certified classmembers in order to administer opt-out notice, which is a (b)(3) issue even in circuits recognizing that requirement—as the district court misconstrued it. *See* 1-

ER-22.  Rather, these "concerns … go directly to the heart of the inquiry under Rule 23(b)(2) into the relationship between the class proposed and the relief sought." *Shook*, 543 F.3d at 613.

## CONCLUSION

This Court should reverse certification of the (b)(3) and (b)(2) classes.

Respectfully submitted,

/s/ *Alan Schoenfeld*

| | |
|---|---|
| DAVID C. MARCUS | ALAN SCHOENFELD |
| CHRISTOPHER T. CASAMASSIMA | RYAN CHABOT |
| JOSHUA A. VITTOR | WILMER CUTLER PICKERING |
| WILMER CUTLER PICKERING | HALE AND DORR LLP |
| HALE AND DORR LLP | 7 World Trade Center |
| 350 South Grand Avenue | 250 Greenwich Street |
| Suite 2400 | New York, NY 10007 |
| Los Angeles, CA 90071 | Tel: (212) 937-7294 |
| Tel: (213) 443-5312 | alan.schoenfeld@wilmerhale.com |
| david.marcus@wilmerhale.com | ryan.chabot@wilmerhale.com |
| chris.casamassima@wilmerhale.com | |
| joshua.vittor@wilmerhale.com | |

March 12, 2026

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i).

1.      Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B), the brief contains 9,386 words.

2.      The brief has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO in 14-point Times New Roman font.  As permitted by Fed. R. App. P. 32(a)(7)(B), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ *Alan Schoenfeld*
ALAN SCHOENFELD

March 12, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of March, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ *Alan Schoenfeld*
ALAN SCHOENFELD